Good morning. May it please the Court, I'm John Ward here on behalf of Mr. Metters. My position is basically that the juror who was discharged in this case was an exemplary juror and that any other reading of the record is just flat-out unreasonable. And the reason that I say that is if we could just step back a minute and take a look at how this case went to the jury. Mr. Metters' hope for acquittal rested on what he attempted to construct as a theory of duress. His claim was that he owed money to drug dealers and that he was forced and so forth, as the Court well knows. That defense — He also testified that he never intended to give back the money. Okay. Right. However, the — as the instructions unfolded for the jury, the judge told the jury that while duress, the duress that Mr. Metters testified to, was not a defense in and of itself, it could be considered with all the other facts of this case in determining whether or not the requisite specific intent was present. Now, the foreperson of the jury, until she was replaced and then discharged, wrote a series of notes to the judge about this very precise legal issue. First, she simply — I think she simply asked for a repetition of — the notes, by the way, are in the excerpts of the record at pages 203 and following. First, clarification of the definition of specific intent. The judge did that. That was on the first full day of deliberations. The second day, she asked for more clarification. She asked, do the circumstances include all the events of the day? Are they limited to what went on at Wendy's? Are they used only to determine whether the money was to be returned? The court answered that by saying, yes, you can look at the whole — at all these events. They go back, they deliberate some more. Then she writes a third note, which really kind of focuses — which tells us perhaps more than we should know about what her mental processes were. She says, what should the jury do if a member of the group defines specific intent as the purpose of committing the alleged crime, and the rest of the jury understands specific intent in reference to the action that would predict that the defendant would return the money to Wendy's? Now, we're not here to talk about, obviously, whether or not the court's instruction or whether the duress, all that was raised and decided it's gone. But I think what we do have is an example of a juror that was honestly grappling with the instructions that were given to her, and not only that, her notes make it clear that she was — she articulated her position with sufficient clarity that not only did the other jurors understand it, but that she was able to put it into words that her note makes clear, that this was — she was troubled by the fact that, in her view, the government had not proved specific intent beyond a reasonable doubt. Okay? And this went on, not for a half-hour like in Perez v. Marshall, but a day and a half. And my question to the Court is, what more could be expected of this juror? I mean, I don't think that's the question you ought to be asking the Court. You should be asking the Court where — where there is a violation of the Federal Constitution as interpreted by the law of the Supreme Court. We're here on habeas. It's a good argument if you were in the State court of appeal. Thank you. But that's not our — you're welcome. But that's not our question. As — as moving as you may — as you may be in that area, all our decision here is, is whether what was done there was a violation of the Federal law as interpreted by the Supreme Court of the United States. Where is your case law from the Supreme Court that says what occurred here was a constitutional violation? Okay. Where's the beef? You'll forgive the — Right. And — and here's how it goes, Your Honor. The clearly established principle of Supreme Court — of constitutional law as defined by the Supreme Court is that any criminal defendant is entitled to an uncoerced jury verdict. Okay. Lowenfeld v. Phelps, this Court's case in Sanders v. Lamarck. Okay. Well, wait a minute. Which Supreme Court case are you relying on? Well, I'm relying — I would say that the issue is for — to this — to this panel, the issue is foreclosed by Sanders v. Lamarck, which holds that — Sanders v. Lamarck, which I cited in my brief, was a juror holdout case. From which court? Our court. Yes. Having to do with our law in our circuit. No. Excuse me, Your Honor. It was a post-Edpa case. And — All right. But — but that isn't the rule. The rule isn't what the Ninth Circuit said or the Tenth Circuit, Eleventh Circuit. The rule is, what did the Supreme Court say? It's very restricted. So what is your closest Supreme Court case that shows we should — we should reverse? Lohenfeld v. Phelps says that any criminal defendant is entitled to an uncoerced jury verdict. So if you discharge a juror, okay, for doubts about the evidence, you are, as Sanders says, that is the ultimate form of juror coercion. Okay? In this case, it's clear that the juror who was discharged had doubts about the government's case. Okay? That's — we're halfway there. We're halfway there. The question then becomes, is it reasonable to say that there was some other reason, in addition to her problems with the evidence? I mean, it's sort of like in the Batson line of cases where there's a prima facie case that a juror was discharged because of race. Then the question becomes, was there some other reason except that here we're dealing with the Sixth Amendment and the right to an uncoerced jury verdict. So the scrutiny has to be a little tighter. Otherwise, every time a dissenting juror held to her — his or her position, she would be discharged and there would be no remedy. So the question comes down to, was it reasonable for the State courts, the trial judge and the other California courts, to conclude that there was something else besides her doubts about the case? Okay? Well, what the judge, what the court of appeals said was, well, she refused to deliberate. She refused to deliberate. If that's so, then you're right, Your Honor. We're not — there's no point being here in Federal court. However, my position is that that was an unreasonable determination. And here's how I get there. Even — even though she said it? No. She didn't really say it. She said, if you really look at it — well, I have two answers to that. The first one is that how do we figure out in the absence of something from the U.S. Supreme Court about what reasonable deliberation is, okay? My position in the State courts was, well, we should look to Federal law, okay? Subsequent to arguing this case the first time around, the California Supreme Court decided People v. Cleveland and said, well, we're going to use a slightly less demanding test, which we think reasonably accommodates the competing interest. And the test was, does the record show to a demonstrable reality that the juror failed to — failed to deliberate? And one of the things that they said in Cleveland was, a juror who has deliberated for a reasonable period of time can't be kicked off, okay? And we also know that in the absence of very specific Supreme Court guidance, that we can look to the decisions of other courts, this Court and other courts, in determining whether or not the State court made a reasonable determination. Oh, whoa, whoa, whoa. If the Court of Appeals of California or the California Supreme Court says this is our State law, you're telling us that we have a carte blanche to tell them, no, that's not your State law? No, no. I'm not saying that. And this is — So it's really — it's really not a question of whether the Court of Appeals followed Cleveland or not. That's not a Supreme — a U.S. Supreme Court case. No, but it is — The question is — the question is, when she says — is asked, do you feel that you are unwilling to do so, and later stated, well, more than being unwilling to deliberate, I'm unwilling to subject myself to another seven hours of what I went through yesterday, and finally, she said, it's gotten to be a personal issue. So the question is, did the California Court of Appeal make a reasonable finding based upon California law that that person is an unwilling juror? Isn't that the issue? Yes, it's the issue. And their conclusion was — and this is what I'm arguing to you — is that their conclusion was patently unreasonable. What the California Court of Appeal did the second time around, when they had to look at — first of all, let me just go back and talk about the significance of Cleveland for a second, okay? It's not just a matter of State law. Cleveland was construing the federal Constitution. The reason that they came up with this test was because the Cleveland court clearly realized that you can't kick off — hold out jurors based on their view of the evidence. So they weren't just — And the statute that guides us says the California Supreme — the Supreme Court ruling as decided by the United States Supreme Court, which excludes what the California Supreme Court thinks is constitutional, right? I think, with all due respect, Your Honor, I think that — whenever a lawyer says with that when we have a principle established by the United States Supreme Court, in this case, the right not — to an uncoerced jury, intermediate courts have an obligation to apply that principle to a myriad of factual situations, okay? In this case, they applied it to this particular factual situation. My argument is that their application was unreasonable and that the sources we can look to include — include, importantly, people versus Cleveland, because let's — let's say that Cleveland represents a reasonable — a reasonable way to approach this. Okay? I mean, I suppose that my real — When the statute says federal law as stated by the United States Supreme Court, we can say, and the California — No. No, that's not what I'm saying. I'm saying that when you have — it's sort of like, thou shalt not commit adultery. Okay? Fine. It has to be construed — this — this principle has to be construed in — in thousands, tens of thousands, hundreds of thousands of factual situations. Okay? It sounds like you're making the argument that the California court of appeal misapplied Cleveland. No. What I'm saying is that the California court of appeal dishonored — dishonored the principle that a criminal defendant is entitled to an uncoerced jury verdict. And one of the — one of the ways that I'm attempting to demonstrate that point is by pointing to Cleveland, okay, where Cleveland said, look, you can't — you know, if a juror has been deliberating, however inarticulately or articulately or whatever, for a reasonable period of time, you can't simply say, well, you know, okay, we know that you're — that you have problems with a government case, but you're not deliberating properly. Okay? And I think that — She said she was unwilling to continue to deliberate. No. What she said was, actually, she said — and we — it's — it's in the — it's in the excerpts of the record at 173 and 174. She said — she said — I'm sorry. Could you just give me a second to find it? It's — yes. She said, I'm open to the fact that I may be wrong. I'm sorry? Supplemental excerpt of Record 10, question, do you feel that you cannot continue with deliberations, response, I'm unwilling to? No. Well, I guess what I'm — what I want to point to is some things that clarify that, okay? I'm open to the fact, she says — the judge asked her, well, would you be able to change your vote if your fellow jurors convinced you that your decision was wrong? This is at 173. She says, I'm open to the fact that I may be wrong. She says, will you be able to change your vote if your fellow jurors convinced you that you were wrong? This is after a day and a half of deliberations. She says, I think if that were true, I would be able to change my vote. I've been unable to, but I'm willing — but I'm not willing to deal with what went on yesterday. They're not trying to convince me that I'm wrong. They're trying to convince me that I'm stupid, okay? Now, we know the jurors don't have the right to take themselves off a jury simply because the heat turns up. I mean, every time you have a situation like this, where you have an 11-to-1 situation, the other jurors are going to say, you're not listening. You're wrong. You're not — you're not explaining your position. I mean, this is — this is what's going to happen. And so, you know, in order — in order for the courts to have been reasonable, they would have pointed — for example, in Perez v. Marshall, this Court may have upheld the trial judge's finding that the juror was emotionally incapable of going on. There was no such finding by the trial judge here. What I'm saying to you is that this record, because of the — the very overintrusive inquiry of the trial judge, gives us here, 10 years later, the opportunity to look at it — in other words, this is not based on demeanor. This is not based on credibility. We have all the information that the trial judge had. We have all the information that the California Court of Appeal had. And on the basis of all that information, it is clear that this juror deliberated. She made her position clear. She made — the other jurors understood it. They simply disagreed with it. As — as trial counsel said to the judge way back then, she has been, if anything, an overly conscientious jury. And at this point, what he — what trial counsel asked the judge to do was to say to the juror, look, you know, this is going to end, okay? This is not going to go on forever. In other words, basically, the judge was faced either with recognizing the reality that an impasse had occurred or sending the juror back to deliberate some more. The judge didn't do either of those things. And what — the result of that, and the only result of that, was a clear violation of Loewenfeld v. Phelps in the sense that the — he coerced the jury. And as trial counsel said to the judge, you know, if you don't do something now, what you're putting at risk is — what you're creating is the possibility that this woman will be forced to change her vote, okay? And that's where the judge — I mean, because juries don't decide these matters. Judges do. The trial judge and the court of appeal had an obligation to look at this record in an objective fashion and decide if this really was a case of a juror being conscientiously troubled by the government's case or by a juror who was turning her back and saying, no, I won't deliberate. A few minutes left. Do you want to save it for rebuttal? I'll save it for rebuttal. Thank you. Thank you for your argument. We'll hear from the Respondent at this time. Vance? May it please the Court, John Vance for Respondent. This case, all the issues in this case are clearly governed by 2254e1. The findings of the State court of appeal are presumed correct. And unless this Court can find, by clear and convincing evidence, that those State court findings are wrong, we're — you know, the State — this Court has to affirm or reject the petition for habeas corpus. The State trial judge determined, among other things, that this juror had engaged in misconduct? That's correct, isn't it? There were — I'm drawing a blank, generic — But why don't we start with whether he used that term? Yes. He said this juror had engaged in misconduct. That is — that is my recollection. My — my hesitation, Your Honor, is that I don't specifically recall the passage. But there is my — that is my general recollection. What misconduct did this juror engage in? Well — and this is where I hesitate to get into, because I don't recall the particular passage of the trial judge. Let's assume that he used that word. What part of her conduct equals misconduct? Refusing to deliberate. Well, she thought that this defendant — and perhaps erroneously, you'd probably kick a first-year law student out of class for coming to this conclusion. But her conclusion was that because the guy robbed the Wendy's with a fake gun to pay off the drug dealer, he didn't possess the specific intent as defined in the statute. No. We simply don't know that, Your Honor, because the thought process — well, for two reasons. One, the Court was very clear in talking about wanting to make sure that they did not get into the thought process of the jurors and get into what they were thinking. And so that's not in the record. I mean, the — I believe the — we have to get back to what, you know, the trial judge ultimately did, which was excuse her for nondeliberation and granted her request. And in the facts that we've talked — But she said she didn't want to go back in and be beaten up anymore, that she was willing to talk and — Right. If they could talk her out of her position, she would consider that. But she didn't want to go back in and be beaten up anymore. And that's refusing to deliberate. I mean — How is she different than the — than Henry Fonda in 12 Angry Men? Because this is the — In the movie? Not for many years. Not — First-degree murder case, they go in, they immediately have a vote, and he's the only one who votes for not guilty. And the reason is that he wants to talk some more. Right. And the jurors get all mad and angry at him, and they want to throw him out of the room, blah, blah, blah, blah. How is this woman different? Because Henry Fonda in that — in the movie, as I recall it, never sent a letter out to the trial judge asking to be excused, as Juror Number 4 did here. The inquiry that then took place the following day was precipitated, in essence, by a letter, or was preceded by a letter from the trial juror, Number 4, requesting to be excused. Then we get into these questions of her where she says, I'm unwilling to deal with what went on there, I can't go back, I'm unwilling to, yesterday was too painful. The jury process, you know, requires deliberation. And she's refusing to do what we require jurors to do and expect jurors to do, which is to deliberate. And she's refusing to engage in the process. And the State Court of Appeals decision under 22 — you know, is presumed correct under 2254e1. And with this record, where it starts with this juror asking to be excused, it's then followed up with the various statements that we've talked about on the — this morning, and with other statements she's made, you know, clearly shows that she refused to deliberate, that the State trial court's decision to excuse her was based upon that, and the State Court of Appeals decision finding substantial evidence that that was correct is a finding of fact. How does this really differ from Sanders v. Lamarck? You know, Sanders is a habeas case. It strikes me it's almost the same circumstance. You have a holdout juror, and the other jurors are complaining, saying, well, she won't deliberate. She won't look at the facts. They send a note out asking the judge to excuse the juror because she's not deliberating. And we said that that violated the Constitution. But here we have the situation where this juror said that she's, you know, refused to deliberate. And that's, I believe, the difference. And this juror is — Well, it's not — I take your point. But in essence, in answer to the question, the juror comes out and she says, I'm not going to give up my firmly held beliefs. And then the judge in Sanders kicked her off the jury, accusing her of misconduct, slightly different facts at that point. But what's different about it? It's a coerced verdict when you know there's one holdout, and you kick that — that — I mean, you know there's a holdout, you kick — the judge kicks the juror out — the holdout off the jury, and there's a conviction 20 minutes later. What happened in Lamarck, in Sanders-Lamarck, is exactly what happened here in terms of that. Same — same result. But — but for the fact that here we had a juror, the — we had a trial court. Not to interrupt, but is — is it your view that the only meaningful difference is the fact that she sent the note out, and that's the pivotal difference between the two? Well, that and all the other statements that she made, where she said that I'm refusing to engage in the process. And that is, I think, a substantive difference. And under 2254e1, it's not — you know, it's not objectively unreasonable for the State court of appeals to have reached that decision. Even if, you know, Your Honor might reach a different opinion, I don't — We're faced with the same situation as Sanders, though. And — and we said, as a matter of fact, applying these things, that the — the California court of appeal got it wrong. That in fact, under clearly established Supreme Court law, it's applied to this situation. You can't take out — you can't remove the holdout juror. If — if — I'm not sure that there's a meaningful difference, but there may be a difference in the fact of the tender of the — the communication coming first from the juror as opposed to the foreman. But it's a pretty close case, I think. Well, I — I understand the Court's position, and, you know — Let me just ask you a question. And — and — or, you know, I understand the question. But I think under — and — and I would — I keep going back to this idea that this is a finding of fact, because the State court of appeals twice in their opinion, you know, said, you know, we find substantial evidence. They said, you know, there could have been other interpretations, not that they admit that, but they find — make a finding of fact. And that's not a — presumed under 2254e1, I keep going back to that, that that's not clearly unreasonable. There's not clear and convincing evidence on this record. And that's what I think we have to focus on, is this record, because we — you know, there's facts in all these cases. We look at favorable facts, unfavorable facts, try and analyze and analogize. But ultimately, it turns on the facts of this case, you know, where they're under these facts, and 2254e1 is the controlling fact — case and decision, and — and controls the outcome. I mean, the State court of appeals said, and I'm trying to find the actual quote right now, I had it marked, you know, the record indicates that juror number four was because she found the process painful and personal, and not because she was unwilling to change her views of the evidence. And that's quoted in my brief at page 15. That's a finding of fact under e1 that is presumed correct unless there's clear and convincing evidence to rebut that, and there isn't in this record. At another — No. Because I'm — I mean, you said you didn't recall. I'm looking at page 527 of the transcript. This is an appellant's excerpt of record volume 2, and I'm looking at what looks like bait stamp number 237. It's kind of weak, but this is right where the State trial judge issues the decision and, therefore, pursuant to Penal Code Section 108995, Ms. — I'll leave out her name — is guilty of misconduct and prevents her from serving. The State trial judge said she violated the California criminal law. At this point — What's the factual basis for that? And isn't that an unreasonable application of the law, to conclude that she engaged in misconduct, criminal misconduct? Your Honor, at this point, I candidly have to say I don't recall that particular passage, and I apologize to the Court for not being able to answer the Court's question. I focused, as all the briefing in this case has been focused, since this, you know, from the State court of appeals two times to the California Supreme Court to here, on whether there was evidence to justify her excusal for refusing to deliberate, because ultimately, that is what the State trial court did, was to excuse her for refusing to deliberate, and that's what the State — I've read to you from the transcript. The judge concluded she had violated California criminal law. Again, I'm not familiar with that particular penal code section. But the State trial court also found, and I wish I had my — Roberts. He went on to find that there was good cause to excuse her from jury service. Right. Because she refused to deliberate. And that's what the focus had been. And that's what ultimately, when he said, I grant your excuse, your request. So, I mean, that's ultimately what we — you know, that was the operative fact of why the Court did it, and that's the operative — that was the operative — not the operative, that was the argument in the State court of appeals. That's what we're here on, is this — whether there was sufficient evidence to sustain the State court of appeals' decision that she refused to deliberate. Now, if you'll indulge me, I want to ask one more question about Sanders before — in Sanders, and I — and I reviewed this just to refresh my recollection. In Sanders, the juror offered to stop deliberating. She said — she then — I'll quote from the op-ed. Juror 4 then offered to the other jury members to excuse herself for the purpose of moving deliberations forward. And that's what prompted the foreman to send the note in. Is there really a meaningful difference from her saying, okay, I'm going to — I will excuse myself to the jurors, and the foreman then saying — asking for her to be excused in this circumstance where she sends the note herself? Absolutely, Your Honor, for the same reason, which is that she never — you know, our juror never said, I want to — you know, I'll give up — you know, get another juror in there and they can do it. We don't have those facts. What we have here is a juror who is refusing to engage in the process as found by the State trial court and as found by the State court of appeals. Well, that's what she was doing when she sent the letter to the judge, wasn't she? She's — in effect, you get another juror in here. No. I'm getting beaten up, and I want to withdraw. But we expect jurors to deliberate. The process requires — I mean, there's — you know, we — there's all — you know, you can find — there's cases, and I think we cited them at one point, you know, about the hurly-burly of jury deliberations. And, you know, the cases are replete with jurors screaming at each other and no error found or no misconduct found. So we know that a jury deliberation is not always going to take place on a high intellectual level, on an emotional level. And what we have here is a findings by the State trial court and the State court of appeals that this juror was refusing to do as the law required, which is to deliberate. Okay. I think we understand your argument. If — and I just want to make one additional point in reading my briefs, sitting here and thinking about the morning calendar. If we get to the second issue, you know, I don't want to argue about the procedural default and everything. If the way the — if the Court ever reaches that argument and rejects our position, remand should be what happens. It should be remanded to the district court on that particular issue. If that is viewed as separate from the overall issue, I don't believe it is. I believe everything is controlled by 2254e, the findings, the fact that this juror was not deliberating and that that controls everything. If the Court does divide it up into the separate issues and we lose the procedural default, it would be appropriate to remand. Thank you very much. Thank you for your argument. Thank you. Thank you. I think it's significant that this so-called request to be — all right, let's call it a request to be excused — was preceded by a request by the jury that she be discharged. And, again, I return to the point that it seems clear that if the discharge is motivated, motivated by a desire for a unanimous jury verdict, which is clearly what the other jurors wanted in this case, that that just simply cannot be squared with the basic principle that the defendant is entitled to an uncoerced jury verdict. I think that's — I think you understand my argument. I also do continue to press the second argument, that there was no procedural default in this case. Judge Patel felt that, even though she rejected the first argument that we've been talking about, that Mr. Meaders could quite conceivably prevail on the second. And I think I've persuasively demonstrated that there was no procedural default in this case because the State appellate court's refusal over the dissent of Justice Sotomayor's inquiry of the jurors was intertwined — California appellate courts have the power to consider any points raised by the record, whether or not counsel, in this case me, effectively raised them, when justice so requires, which means that in refusing to deal with the overly intrusive argument, they decided that justice did not require, which is, in essence, deciding the constitutional issue. And for that reason, this was not independent and adequate State grounds. And thank you. Thank you for your argument. The case, very interesting case, just argued, will be submitted for decision.
judges: Wallace, Hawkins, Thomas